| 1 | Your Name: | Hossein Asghari |
| 2 | Address: | 281 Dogwood Ranch way |
| 3 | | Patterson, CA 95363 |
| 4 | Phone: | (321) 388-4765 |
| 5 | E-mail: | Ha200@netzero.net |
| 6 | Pro Se Plaintiff |

FILED
MAR 17 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

Division: ☒ San Francisco ☐ Oakland ☐ San Jose ☐ Eureka

Hossein Asghari

Plaintiff

vs.

Wells Fargo Bank, N. A.

Defendant.

Case Number: **CV25    2598**
**SK**

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**DEMAND FOR JURY TRIAL** *[check one]*

Yes ☒ No ☐

**JURISDICTION**

1.  My case belongs in federal court under federal question jurisdiction because it is based on:

☒ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 *[for claims of discrimination based on race, color, national origin, religion or sex]*

☒ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634

1
2
**VENUE**

3      2.  Venue is appropriate in this Court because a substantial part of the events I am suing

4          about happened in the San Francisco district.

5
6
**INTRADISTRICT ASSIGNMENT**

7
8      3.  This lawsuit should be assigned to the San Francisco Division of this court because the

9  events happened at 333 Market street, San Francisco, CA 94103  which is in the County of  San

10 Francisco.

11     4.  Plaintiff Hossein Asghari is an Infrastructure engineer who worked for Wellsfargo at

12 333 Marker street, San Francisco, CA 94103.

**STATEMENT OF FACTS**

13
14     5.  I filed charges with the Equal Employment Opportunity Commission regarding

15 defendant's conduct on *10/25/2024*.

16     6.  The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue

17 letter which was received by me on or about *12/23/24*. I have attached that Notice to this Complaint.

18     7.  I started as a system admin at Wellsfargo on 2/18/2008. I received quarterly reviews

19 since hired. I always had at least a meet rating and received pay increases and bonuses almost every

20 year. I never had any issues with any of my managers or other team members and always have been

21 a team player.

22     8.  The harassment started only a few months ( 2/1/2024) before I was terminated

23 (4/29/24) when  Robin Burguess  was assigned to manage our  group. I did not even receive a review

24 from Robin before I was terminated.

25     9.  I was given 45 days to sign the severance package. I was forced to sign the package

26 because I needed the money to pay for my expenses. I did not believe, at the time, that the extra

27 stress, that I was put under, could possibly lead to my premature death (Denise Prudhomme , a 60

28 year old Wellsfargo employee died on 6/30/24 in her cubicle). The  45 days is not enough time to try

COMPLAINT
Page **2** of **12**

1    to first, resolve the issue with Wellsfargo Human Resources   then  file a complaint with EEOC. The

2    EEOC prefers to get involved only after an attempt is made to resolve the issue with your employer

3    first. It will take more than 45 days alone to resolve the issue with wellsfargo Human Resources

4    (please see attached communication with Wellsfargo)

5        10.    Under freedom of information act, I requested to have access to the bank

6    communications (emails,etc) as it related to my termination. I submitted the request on 3/13/2025

7    and it was assigned the tracking # 550-2025-008769 by the U.S. Equal Opportunity Commission.

8        11.    I am also requesting to know the exact date when my manager ,Robin Burguess, found

9    out that I was being terminated. She stopped the harassment just before her vacation in the middle

10    of April 2024. Some of the harassment that stopped around 4/12/2024 included:

11                        • her harassing emails,

12                        • her constant monitoring of my work and escalating it to other team members

13                            (such as Ken),

14                        • contacted me about  my lack of progress, on some the issues that she assigned

15                            to me

16                        • not following her new instructions (such as, not greying out my calendar in

17                            time when I was on PTO)

18        12.    The reason I like to know when Robin found out about my termination is that there is

19    no need to get harassed by Robin before April 15, 2024 if I was scheduled to be terminated. I like to

20    know if the goal of the harassment, was to make me quit my job.

21        13.    The harassment caused  my high blood pressure and other health issues. My blood

22    pressure was consistently between 140 to 150, It has now been  reduced to 120. I was working in a

23    stressful environment before Robin started managing our group but  Robin turned it to  a hostile

24    work environment.

25        14.    During the 16+ years, from 2/18/2008 to 6/29/2024, that I was employed by Wellsfargo

26    as an Infrastructure Engineer, my job responsibilities included:

27                        a.  Bank Teller software and production support

28                        b.  Hardware infrastructure support

COMPLAINT
Page **3** of **12**

c. 24x7 Production support of Bank Teller Software that included nights and weekends

d. Web server software support running on Linux servers.

e. Installed Venafi certificates on Linux web servers

f. Developed scripts in Linux shell to restart services.

g. Developed scripts to modify data in SQL.

h. Autosys—Monitored Autosys jobs, reviewed logs then request to restart jobs if needed

i. Resolved ServiceNow tickets that were opened by customers.

j. Responded to email requests and Jira tickets.

k. Monitored the health of the system and escalated as needed.

l. Participated in calls to restore services.

m. Monitored the environment and escalated as needed to resolve the issue ASAP.

n. Installed certificates on the web servers.

o. Monitored health of Web servers.

p. Installed software on the web servers via uDeploy.

### Discrimination - Age -Claim for Relief

☒ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634

____. I was able to and did perform my job satisfactorily.

15. I started as a system admin with Wellsfargo on 2/18/2008. I received quarterly reviews since hired. I always had at least a meet rating and received pay increases and bonuses almost every year. I never had any issues with my manager and other team members and always was a team player.

_____.I was subjected to Termination of Employment by Wellsfargo on 4/29/2024

16. The harassment started only a few months ( 2/1/2024) before I was terminated on 4/29/24 when  Robin Burguess was assigned to manage our group. I did not even receive a review from Robin before I was terminated. The following is a partial list of the harassment that I was subjected to:

- Robin asked me to work harder, although I did not have the opportunity to take my Paid Time Off (PTO) which had accumulated to more that 6 weeks. I also did not have enough time to complete the required training (such as getting a cloud certification).

- Robin would increase my work load by assigning additional tasks and projects to me; for example, Robin wanted me to automate 2 tasks that we were doing manually per 2 weeks

- Robin was assigning new projects to our team that I was required to participate in, such as, the Automatic Teller Machine Project.

- When I asked Robin to push back on additional projects, in one of our many staff meetings, she replied that it was needed to keep the Wellsfargo  project deadlines

- Robin had no concern for well being or health of the employees because she continued to assign additional project while I was at a breaking point

17. Robin hired a new younger Engineer (Ken), outside of my protected class, in February/March time frame before I was laid off on 4/29/24. Although, I don't know Ken's exact age but he looks a lot younger that I am.  Ken looks to be  below 40 years old.

18. After the death of Denise Prudhomme on 6/30/24 in Phoenix (AZ), it became clear to me that it was a company policy to get rid of older employees. The assignment of Robin Burguess ( on 2/1/24) to lead our team was to implement that unwritten policy. I was terminated on 4/29/24 and Denise died in her cubicle only a short time later on

6/30/24. It shows that the additional stress that employees are put under can lead to their death.

19. When Robin started, she told us that things are going to change and we have to work harder.

20. Robin continually interfered with my work and sent harassing emails about not meeting her strict deadlines and instructions.

21. Robin would involve Ken to look into the issues that she assigned to me, being new to our group, Ken did not have the expertise to identify and fix the issues. For example, there was a cron job that was running and it generated some alerts in form of an email. Since we did not have the correct privileges to fix the issue, I could not resolve it. I did not have the correct privilege so I asked the System Admin team to look into the issue and resolve it. However, Robin involved Ken to look into the issue but Ken's recommendations would not have fixed the issue. The issue was finally fixed by the system admin group who had the correct privileges.

22. Sometimes in March of 2024, I complained to Robin several times about our work load and she should try to reduce our work load. In one instance, in one of our many staff meetings, I asked Robin to push back on the ATM project that required our involvement almost a few hours every day but she told me that the project can not be delayed.

23. I was terminated on 4/29/24 only a few months after Robin started managing our group (on 2/1/24).The harassment seems to have stopped around 4/12/24 time frame before Robin took a 10 days vacation to Florida. It seems the decision had already been made to terminate me before Robin took her vacation because her harassment had stopped a few says before she left for her vacation.

24. I had all kinds of health issues due to the additional stress that I was put under by Robin:

   • High blood pressure (my blood pressure was hovering over 140 now it has now reduced to 120).

COMPLAINT
Page **6** of **12**

- Sleep disorder due to shifting schedule (we had shifting working hours, one week, I had to work starting at 5 AM and the next week at 2 PM)
- Lack of sleep caused many health problems due to shifting hours
- Shortness of breath
- Unable to exercise regularly due to a variable schedule
- Anxiety and sleeplessness due to toxic work environment created by Robin
- Gastronomical issues, such as, heartburn and GERD
- Swelling of legs for sitting for long periods

25. We had 4 rotating shifts that can contribute to all kind of health issues. For example, I had to work starting at 5 AM one week and 2 PM the following week. The following were our different shifts:

- 5AM -9AM
- 9 AM – 2 PM
- 2 PM – 5 AM
- Weekend shift

26. Denise Prudhomme , a 60 year old Wellsfargo employee died on 6/30/24 in her cubicle at Wellsfargo office in Phoenix and was not discovered for 4 days. The Wellsfargo company policy to increase productivity and getting rid of older employees contributed to her death. I was subjected to harassment from 2/1/24 to 4/12/24 and Denise died on 6/30/24.

27. There was a Wellsfargo company policy to promote new managers in order to create a toxic work environment to force older employees out. For example, Robin started her harassment as soon as she became our new manager, Initially, I assumed Robin was an equal opportunity harasser; therefore, I tried to ignore her harassment. At the time, it never occurred to me that she may be implementing a company policy to get rid of older employees. The common thread ,between harassment that I was subjected to and the harassment that Denise may have received, is wellsfargo company policy.

28. I was terminated while we were losing another team member who was moving to India and Robin had hired a new team member (Ken).

29. According to Wellsfargo, I was terminated because of the required workforce reduction but it runs contrary to Robin hiring a new team member (Ken) only a few weeks earlier (who looks a lot younger that I am and perhaps younger than 40 years old).

30. I was given 45 days to sign the severance package. I had to sign the package because I needed the money to pay for my expenses. Only 45 days is not enough time to file a complaint with EEOC and try to resolved the issue with your employer. The EEOC gets involved only after an attempt is made to resolve the issue with your employer. It takes more than 45 days alone to resolve the issue with wellsfargo (please see attached communication with Wellsfargo)

31. On 4/29/24 when I was being terminated, It seemed odd that Robin did not know any details about my severance package and she had to look it up online. However, she was promoting the idea of signing the severance package so that I would get additional pay.

32. I contacted Wellsfargo Human Resources after a few weeks after my termination date 4/29/24 ( but before the 45 days deadline given to sign severance package). However, Wellsfargo HR was only trying to dismiss me and encouraged me to try to resolve the issue internally (see attached). It would have taken much longer than 45 days to try to resolve the issue with Wellsfargo Human Resources and then contact EEOC. Therefore, I decided to sign the severance package.


_____.    Wellsfargo terminated my employment because of my age on 4/29/2024

33. My manager, Robin Burguess, hired a younger employee only a few weeks before I was terminated. The reason given for my termination was work force reduction which runs contrary to hiring a younger team member only a few weeks earlier and we were losing another team member who was moving to India.

COMPLAINT

Page **8** of **12**

**National Origin Claim for Relief**

**(Harassment/Hostile Work Environment Created by Plaintiff's Supervisor –**

**National Origin)**

    ☒ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 *[for claims of discrimination based on race, color, national origin, religion or sex]*

\_\_\_\_. I was able to and did perform my job satisfactorily

34. I started as a system admin with Wellsfargo on 2/18/2008. I received quarterly review since hired. I always had at least a meet rating and received pay increases and bonuses almost every year. I never had any issues with my manager and other team members and aways was a team player.

    \_\_\_\_. I was s Terminated on 4/29/2024 by Wellsfargo

    \_\_\_\_. The sole reason or motivating factor for this action was my national origin,

35. I am from Middel East. On April 15, she brought up the issue of Palestinian protestors blocking the Golden gate bridge in San Francisco in our staff meeting. It was strange to bring up politics in our staff meeting. Subsequently, I was terminated after 2 weeks on 4/29/24.

36. In company wide training on Diversity and inclusion, we were instructed not to specify any protected class in our statements. Robin, as a manager, must have completed the required training and she was aware of diversity and inclusion material. However, Robin could not hide her prejudice when she specified "Palestinian" protestors.

37. Robin complained about '"Palestinian Protestors" blocking the Golden Gate bridge while on her earlier conversation with me, she told me that she was not taking any of the bridges on her commute to work.

38. I asked the wellsfargo HR to access Robins email communications between myself and Robin and compare them with other team member in our group. Her email communications would show her hostility towards me.

COMPLAINT
Page **9** of **12**

39. Robin started harassing me as soon as she was assigned to lead our group but I ignored it and I assumed she was an equal opportunity harasser. Unfortunately, after I was terminated on 4/29/24, it became clear to me that I was being singled out,

## Demand for Relief

Plaintiff respectfully requests the following relief:

1. Equitable relief : I like to be reinstated to my old position as an Infrastructure Engineer working from San Francisco Bay area. I always loved my job with the exception of the last few months (when my new manger Robin took over our group).

2. I like guarantees that I will not be terminated for another 5 years until I reach age 70 when I will receive the Maximum social security benefits. I have not saved enough money to be able to retire comfortably.

3. Compensatory damages: I have been trying to gain employment since I was terminated but I have not been successful. I like to receive my normal pay, insurance , additional training and costs associated with that (such as , hotel expenses , training fees, food, airfare, etc) until I am employed full time.

4. I like to receive the 6% 401K matching that I would have received if I was not terminated

5. I like to receive the bounces that I was receiving every year

6. Costs and attorneys' fees as permitted by law

7. Any other relief the Court deems proper

   My severance pay ended on 2/8/25. I like to receive my normal pay from 2/9/25 until I am reinstated.

## Demand for Jury Trial

Plaintiff demands a jury trial on all issues.

COMPLAINT
Page **10** of **12**

Respectfully submitted,

Date: 3/17/25     Sign Name: _____

                  Print Name: HOSSEIN ASGHARI

**COMPLAINT**
**Page 11 of 12**

1    Intentionally left blank.

**COMPLAINT**



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**San Francisco District Office**
450 Golden Gate Avenue 5 West, PO Box 36025
San Francisco, CA 94102
(650) 684-0910
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/23/2024

**To:** Mr. Hossein Asghari
216 scenic rd
FAIRFAX, CA 94930
Charge No: 550-2025-00241

EEOC Representative and email:    GISSELLE PEREZ
Investigator
gisselle.perez@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally signed by WARREN CHEN
Date: 2024.12.27 11:56:08 -08'00'

*for*    Christopher Green
Acting District Director

**Cc:**
Xor Vue
Wells Fargo Legal Department
90 S. 7th Street, Floor 9 MAC-N9305-09R
Minneapolis, MN 55402

Alex Earle
Wells Fargo Legal Department
90 S 7th St FL 17
Minneapolis, MN 55402

Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 550-2025-00241 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Nancy A. Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 550-2025-00241 to the District Director at Nancy A. Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.



**Wells Fargo & Company**
HR Shared Services
Displacement Operations
P.O. Box 29781
Phoenix, AZ 85038-9781
1-877-584-6097

# Memo

| To: | Hossein Asghari,  A0109-105<br>216 Scenic Rd<br>Fairfax, CA 94930 | Empl ID: | 798808 |
|---|---|---|---|
| From: | James Fitzpatrick<br>Managing Director, Technology Executive | AU: | 0073257 |
| Subject: | Displacement Notification | Date: | April 30, 2024 |

As a result of an assessment of our business and staffing needs, your position will be affected by either a position elimination or a substantial position change as defined by the Wells Fargo & Company Severance Plan (the "Plan"). This memo and the enclosed Agreement and Release of Claims (the "Agreement"), provide you with important information about your separation from Wells Fargo Bank, N. A., a Wells Fargo & Company business.

Effective April 30, 2024, you will begin your 60-day written Notice Period (the "Notice Period"). This time is provided to help you prepare for your job search and to conclude any pending business matters. Your manager will inform you about which portion of the Notice Period you will need to be at work, if any, and what portion will be nonworking; however, please note that business needs may require this to change. Your Notice Period will end on June 28, 2024 unless there is a change in your employment status before that date.

You have 45 days to consider the terms and conditions of the enclosed Agreement and Release of Claims. If you sign and return the Agreement and Release of Claims within 45 days after the first day of the stated Notice Period and don't rescind your consent to the Agreement and Release of Claims terms, you will be eligible for Severance Pay as described below.

At the end of the Notice Period, your Wells Fargo employment will be terminated. If you sign and return the Agreement and Release of Claims to Displacement Services within 45 days of your notice date, in accordance with Plan terms, your Severance Eligibility Period will begin on June 29, 2024. During the Severance Eligibility Period, you will be eligible to continue participating in many of Wells Fargo's employee benefits plans (as defined by each plan) and programs. Information about the impact of the Severance Eligibility Period and your specific benefits plans can be found in the Wells Fargo & Company Severance Plan Summary Plan Description (SPD) located in your displacement support package and in the *Benefits Book* on *Teamworks at Home*.

Your employment with Wells Fargo will be terminated effective on the day immediately following the end of the Notice Period. If you do not sign the Agreement and Release of Claims within the 45-day period following the beginning of the Notice Period, you will not be entitled to any Severance Pay under the Plan. We advise you to consult with an attorney before signing the Agreement and Release of Claims.

Enclosed in this packet, you will find a Summary Plan Description (SPD) describing how Severance Pay works as well as other important features of the Plan. In addition to the Summary Plan Description and Agreement and Release of Claims, this packet provides answers to some frequently asked questions and information about the Career Transition Services Program. We recommend that you read this information carefully and encourage you to take advantage of the tools and resources available to you during this time of transition.

Enclosures

© 2024 Wells Fargo Bank, N.A. All rights reserved.

**WELLS FARGO**

Tuesday, April 30, 2024

# Wells Fargo OWBPA Report

In accordance with the Older Workers Benefit Protection Act (OWBPA), this report is only provided to employees 40 years of age and older who have been selected for displacement. This report identifies, by job title and age, the employees in the impacted decisional unit who were selected for displacement, employees who were not selected for displacement, and the factors used in making the selection decisions. Unless otherwise noted, the identified selected employees who meet the eligibility requirements are eligible to participate in the Wells Fargo & Company Severance Plan.

**The eligibility factor(s) used in the selection process were:**

- Job Criticality
- Job Performance
- Location
- Tenure

**The decisional unit for this selection process was identified by the following factor(s):**

- Functionality
- Job Code
- Location
- Multiple Position Numbers
- Position Number

- Reports To Manager

The terms of the Wells Fargo & Company Severance Plan are found in the Summary Plan Description (SPD) provided in the displacement support packet.

© 2024 Wells Fargo Bank, N.A. All rights reserved.

**The following employees have been selected for displacement.**

| Age | Job Title |
|-----|-----------|
| 61 | Lead Data Engineer |
| 68 | Lead Infrastructure Engineer |
| 55 | Lead Software Engineer |
| 62 | Lead Software Engineer |
| 62 | Lead Systems Operations Engineer |
| 33 | Lead Technology Business Systems Consultant |
| 45 | Senior Infrastructure Engineer |
| 63 | Senior Infrastructure Engineer |
| 32 | Senior Software Engineer |
| 51 | Senior Software Engineer |
| 36 | Senior Specialty Systems Operations Engineer |
| 41 | Senior Specialty Systems Operations Engineer |
| 50 | Senior Specialty Systems Operations Engineer |
| 52 | Senior Specialty Systems Operations Engineer |
| 53 | Senior Specialty Systems Operations Engineer |
| 56 | Senior Specialty Systems Operations Engineer |
| 43 | Software Engineering Manager |
| 29 | Systems Operations Associate |
| 34 | Systems Operations Associate |
| 37 | Systems Operations Engineer |
| 40 | Systems Operations Engineer |
| 61 | Systems Operations Engineer |
| 62 | Systems Operations Engineer |
| 66 | Systems Operations Manager |
| 49 | Technology Business Services Senior Manager |
| 60 | Technology Director |

**The following employees have not been selected for displacement.**

| Age | Job Title |
|-----|-----------|
| 30 | Engineering Associate |
| 46 | Lead Infrastructure Engineer |
| 61 | Lead Infrastructure Engineer |
| 38 | Lead Software Engineer |
| 37 | Lead Technology Business Services Consultant |

| Age | Job Title |
|---|---|
| 62 | Lead Technology Business Services Consultant |
| 33 | Lead Technology Business Systems Consultant |
| 44 | Senior Infrastructure Engineer |
| 66 | Senior Infrastructure Engineer |
| 58 | Senior Lead Technology Business Services Consultant |
| 31 | Senior Software Engineer |
| 61 | Senior Software Engineer |
| 35 | Senior Specialty Systems Operations Engineer |
| 36 | Senior Specialty Systems Operations Engineer |
| 37 | Senior Specialty Systems Operations Engineer |
| 38 | Senior Specialty Systems Operations Engineer |
| 41 | Senior Specialty Systems Operations Engineer |
| 42 | Senior Specialty Systems Operations Engineer |
| 46 | Senior Specialty Systems Operations Engineer |
| 47 | Senior Specialty Systems Operations Engineer |
| 48 | Senior Specialty Systems Operations Engineer |
| 49 | Senior Specialty Systems Operations Engineer |
| 50 | Senior Specialty Systems Operations Engineer |
| 51 | Senior Specialty Systems Operations Engineer |
| 51 | Senior Specialty Systems Operations Engineer |
| 51 | Senior Specialty Systems Operations Engineer |
| 51 | Senior Specialty Systems Operations Engineer |
| 54 | Senior Specialty Systems Operations Engineer |
| 55 | Senior Specialty Systems Operations Engineer |
| 56 | Senior Specialty Systems Operations Engineer |
| 57 | Senior Specialty Systems Operations Engineer |
| 60 | Senior Specialty Systems Operations Engineer |
| 63 | Senior Specialty Systems Operations Engineer |
| 77 | Senior Specialty Systems Operations Engineer |
| 36 | Senior Technology Business Services Consultant |
| 37 | Senior Technology Operations Analyst |
| 48 | Software Engineering Manager |
| 45 | Software Engineering Senior Manager |
| 22 | Systems Operations Associate |
| 24 | Systems Operations Associate |
| 24 | Systems Operations Associate |

| Age | Job Title |
| --- | --- |
| 24 | Systems Operations Associate |
| 24 | Systems Operations Associate |
| 24 | Systems Operations Associate |
| 24 | Systems Operations Associate |
| 25 | Systems Operations Associate |
| 25 | Systems Operations Associate |
| 26 | Systems Operations Associate |
| 26 | Systems Operations Associate |
| 27 | Systems Operations Associate |
| 27 | Systems Operations Associate |
| 30 | Systems Operations Associate |
| 32 | Systems Operations Associate |
| 36 | Systems Operations Associate |
| 36 | Systems Operations Associate |
| 37 | Systems Operations Associate |
| 39 | Systems Operations Associate |
| 44 | Systems Operations Associate |
| 27 | Systems Operations Associate Manager |
| 29 | Systems Operations Associate Manager |
| 24 | Systems Operations Engineer |
| 28 | Systems Operations Engineer |
| 31 | Systems Operations Engineer |
| 41 | Systems Operations Engineer |
| 53 | Systems Operations Engineer |
| 61 | Systems Operations Manager |
| 61 | Technology Director |
| 48 | Technology Operations Manager |
| 50 | Technology Operations Senior Manager |

26 of 95 employees in this decisional unit were selected for displacement.

*emailed on May 28, 24 to Wells Fargo HR*

To: Wells Fargo Human Resources Shared Services, Displacement Operations

I, Hossein Asghari (employee id =798808), was displaced on April 30, 2024 after 16+ years at Wells Fargo. I was planning to work to at least until I am 70 years old so that I can maximize my social security payments.

I have been displaced at least 6 years too early. I have an income gap of 125Kx6=750K which it would have paid for my current mortgage. I am currently 64 years old and it is very difficult to get another job soon at this age.

I have always enjoyed working for Wells Fargo with exception of the last 3-4 months when a new manager was assigned to our group (Mrs. Robin Burguess). She created a hostile work environment. I am going to list some of what I consider to be hostile:

- She mentioned to us that things are going to change for our group and we will be required to work even harder
- I mentioned to her that I have not been able to take my PTO since we need additional people to cover our different shifts so that we can allocate time for training and take the necessary PTO but it seems I was completely ignored.
- I was already stretched with the amount of work and rotating working shifts. We had 3 shifts (5AM – 9AM, 9 AM – 2PM, 2PM-5AM next day). We also have 2 additional shifts one for night software installs and another for the weekend coverage. We rotate between shifts, so that one week I had to work 5 AM – 9AM and the next week from 2 PM- 5 AM. This creates a lot of stress and adjustments due to the time shift.
- Since we were short staffed, team members outside of California were given priority to take their PTO because they would lose their PTO but California team member can still retain their PTO.
- Mrs. Robin Burguess also seemed hostile to people from the middle east. Before she took her 2 weeks of PTO at the 2nd half of April, she mentioned about the Palestinian protesters blocking the bridges and have created a traffic jam. As far as I know, the traffic jam did not effect her daily commute to work. I did not understand why she would bring that up in our daily meeting but I decided to ignore it because it seemed irrelevant to me at the time.
- She has hired another principal engineer ,who is from a minority group, within the last 3-4 months. When I was displaced, the new engineer has not had enough time to prepare for his new role. It seems suspicious to hire one engineer and then displace another engineer.
- When I was displaced Mrs. Robin Burguess did not know the details of my displacement package such as the length of the severance period. However, she insisted that I have to sign the release form to get any severance benefits.

I love Wells Fargo, with the exception of the last 3-4 month, have always enjoyed working for Wells Fargo. I do not wish to do anything to harm Wells Fargo in any way and I wish continued success for Wells Fargo.

I have been applying for new positions at Wells Fargo that match my qualifications as they come up in our job site. In the event that I am not hired back into Wells Fargo family, I like to be compensated properly. I was planning on working for another 6 years but I am only receiving 32 weeks of severance pay.

Hossein Asghari

Cell: 321-388-4765

Email: ha200@netzero.net

May 28, 2024



**Wells Fargo & Company**
**Severance Plan Administrator**
MAC F2301-03A
1 Home Campus, 3rd Floor
Des Moines, IA 50328-0001
SCPPlan.Admin@wellsfargo.com

May 29, 2024

VIA EMAIL ONLY: ha200@netzero.net

Hossein Asghari
216 Scenic Rd
Fairfax, CA 94930

RE: Claim Acknowledgment Letter

Dear Hossein:

The purpose of this letter is to acknowledge the receipt of your written employment-related claim for benefits under the Wells Fargo & Company Severance Plan (the "Plan") on May 28, 2024. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, which means the Plan's claims process is structured to comply with certain legal requirements. The Plan provides that we have up to 90 days to respond to claims. The Plan further provides that we may notify you that additional time (not to exceed 90 days from the end of the initial period) is needed to review your claim, stating the reason why the extension is needed and the new due date.

The Plan Administrator (the Head of Human Resources) has delegated the initial review of your claim for Plan benefits to Wells Fargo's Corporate Employee Relations Department. As a result, I have been assigned to review your claim. You can expect to receive a response to your claim no later than August 27, 2024 unless you are notified in writing prior to that date that additional time is needed to complete a thorough review of your claim.

Additionally, contained within your claim were concerns regarding your immediate manager and selection for displacement. Those concerns are outside of the scope of the Plan's claim review process and those specific concerns have been forwarded to Employee Relations for further review and handling.

Sincerely,
Megan O'Hara
Senior Employee Relations Consultant
For the Wells Fargo Severance Plan Administrator

© 2024 Wells Fargo Bank, N.A. All rights reserved.



Megan O'Hara
Sr Employee Relations Consultant

**Wells Fargo Human Resources**
**Global Employee Relations**
MAC D1185-032
11625 N Community House Road
Charlotte, NC 28277
megan.ohara@wellsfargo.com

July 12, 2024

Via: Email Only: ha200@netzero.net

Hossein Asghari
216 Scenic Rd
Fairfax, CA 94930

RE: Severance Plan Claim – Hossein Asghari (EID: 798808)

Dear Hossein,

I have reviewed the claim for benefits under the Wells Fargo & Company Severance Plan (the "Plan") that was received on May 28, 2024, by the Plan Administrator and have reached a determination, as outlined below. Unless otherwise stated, all capitalized terms referred to in this response are defined in the Plan. This response will address your claim under the Plan; it will not discuss any other concerns.

As I understand your claim, you are requesting additional severance benefits under the Plan due to your assertion that you had planned to work until the age of 70, and your displacement is 6 years before you intended to stop working. Specifically, you are requesting that if you are not rehired into Wells Fargo, that you would like to be "compensated properly" since you intended to work another 6 years. Additionally, your claim contained an allegation of a "hostile work environment" and this allegation is outside of the scope of the Plan's claim review process. Your concern was forwarded to Employee Relations for review and will not be addressed in this communication.

In evaluating claims under the Plan, it is my responsibility as the reviewer, to consider the facts of the claim and apply the relevant Plan provisions in reaching a determination. My response references sections of the Wells Fargo & Company Severance Plan and the Plan's Summary Plan Description (Plan SPD), detailed below and enclosed for your convenience.

**Relevant Plan Provisions**

There are multiple sections of the Plan that relate to the information you presented in your claim:

- "How the Plan Works" (page F-6 of the Plan SPD)
- "Severance pay" (page F-6 of the Plan SPD)
- "Covered pay" (page F-6 of the Plan SPD)
- "Completed years of service" (page F-6 of the Plan SPD)
- "Severance pay schedule" (page F-7 of the Plan SPD)
- "Notice period" (page F-7 of the Plan SPD)
- "Continuous Service Date" (Section 2.7 of the Amended Severance Plan 2024)

© 2024 Wells Fargo Bank, N.A. All rights reserved.

These items (or relevant portions thereof) from the Plan are set forth below for ease of reference:

### How the Plan works– (Plan SPD)
Your employment with Wells Fargo will be terminated at the completion of your Notice Period. For more information, see the "Notice Period" section on page 5.

Following your termination of employment, you will receive biweekly post-termination severance payments on Wells Fargo's regularly scheduled paydays based on your completed years of service when the Notice Period ends and the "Severance pay schedule" on page 5 (the "Severance Eligibility Period"), unless you notify Wells Fargo's Displacement Operations in writing that you have obtained a position with another employer, in which case your remaining Severance Pay will be paid to you in a lump sum. For more information, see the "Severance pay" section on this page."

### Severance Pay - (Plan SPD)
The length of time you will be eligible for Severance Pay is based on your completed years of service and the "Severance pay schedule" on page 5 (the "Severance Eligibility Period"). Severance Pay is your Covered Pay for the Severance Eligibility Period, unless you are disqualified, or the Severance Eligibility Period ends sooner as described in the Plan.

### Covered Pay – (Plan SPD)
For most participants, the Plan defines "Covered Pay" as your base salary rate (referred to in the Plan document as the "Total Base Pay") up to a maximum annual base salary of $350,000. This applies to all participants assigned a job class code 2 pay category on the Wells Fargo Human Capital Management System (HCMS). Base salary is your hourly rate of pay multiplied by the number of standard hours indicated on the Wells Fargo HCMS as of the end of the Notice Period and takes into account the number of working days each calendar year. The amount is multiplied by the number of weeks in a calendar year to determine your Total Base Pay.

### Completed years of service – (Plan SPD)
Your completed years of service are the number of complete years of employment you have with Wells Fargo and all Affiliates as measured from your Continuous Service Date on the Wells Fargo HCMS as of the end of your Notice Period.

### Severance Pay schedule – (Plan SPD)

| Completed years of service | Severance Eligibility Period |
|---|---|
| <1, 1 | 8 weeks |
| 2 | 8 weeks |
| 3 | 8 weeks |
| 4 | 8 weeks |
| 5 | 10 weeks |
| 6 | 12 weeks |
| 7 | 14 weeks |
| 8 | 16 weeks |
| 9 | 18 weeks |
| 10 | 20 weeks |
| 11 | 22 weeks |
| 12 | 24 weeks |
| 13 | 26 weeks |
| 14 | 28 weeks |
| 15 | 30 weeks |
| 16 | 32 weeks |
| 17 | 34 weeks |

| 18 | 36 weeks |
| 19 | 38 weeks |
| 20 | 40 weeks |
| 21 | 42 weeks |
| 22 | 44 weeks |
| 23 | 46 weeks |
| 24 | 48 weeks |
| 25 | 50 weeks |
| 26+ | 52 weeks |

**Notice Period – (Plan SPD)**

The Notice Period is the period of time designated by the Company and communicated to the Participant by written notice of a Qualifying Event during which the Participant may consider signing and not revoking the Agreement. The Notice Period begins on the day identified in the written notice of a Qualifying Event and at the sole discretion of the Company, may be completely nonworking, unless your business unit designates in writing that a portion of the Notice Period will be working. Once placed on nonworking notice, you will no longer have authorized access to Wells Fargo systems and secured premises. Changing business needs may affect your nonworking or working status during the Notice Period. If there is a change, you will be notified.

**Continuous Service Date – (Amended Severance Plan 2024)**

Completed years of service are the number of complete years of employment a Participant has with Wells Fargo and all Affiliates. This is measured from the Participant's Continuous Service Date on the Company's HCM System as of the Participant's Termination Date. For purposes of determining the Severance Eligibility Period, the Continuous Service Date is measured as of the last day of the Notice Period…

<u>**Facts, discussion, and determination**</u>

Wells Fargo (WF) HCMS records reflect that you were employed as a Senior Infrastructure Engineer working in Technology Architecture and Engineering when on April 30, 2024, you received notice of a qualifying event - that your position was being affected by a position elimination. According to the WF HCMS records, the end of your Notice Period is June 28, 2024, and as of the end of your Notice Period, your Continuous Service Date is February 18, 2008.

As outlined in the Completed Years of Service section (page F-6 of the Plan SPD), your Completed Years of Service are the number of complete years of employment you have with Wells Fargo and all Affiliates as measured from your Continuous Service Date (February 18, 2008) in the HCMS as of the end of your Notice Period (June 28, 2024). At the end of your Notice Period (June 28, 2024) your length of service is 16 year(s), 4 month(s), and 11 day(s). Accordingly, in determining your severance benefit, and consistent with the How the Plan Works section (page F-6 of the Plan SPD), the Plan was administered using sixteen (16) Completed Years of Service based on your Continuous Service Date of February 18, 2008. Under the Plan, your tenure was correctly factored into the calculation of severance benefits, and the additional factors you identified are not considered in calculating Completed Years of Service or the duration of severance pay benefits.

A review of the severance pay benefits you were offered under the Plan was conducted. Pursuant to the Plan, the Severance Pay Schedule (page F-7 of the Plan SPD) was used to determine the duration of your severance pay. In accordance with the Severance Pay Schedule, you are eligible for 32 weeks of severance pay based on sixteen (16) Completed Years of Service. Similarly, the Severance Pay Schedule is used to determine the Severance Eligibility Period. The Severance Eligibility Period is the period commencing on the day immediately following the Participant's Termination Date and generally continues for the period described in the Severance Pay Schedule as it applies to the Participant, unless it ends sooner in accordance with the Plan. My review of the facts confirms that consistent with the Plan, you were offered the correct number of weeks for your Severance Eligibility Period based upon your Completed Years of Service in

accordance with the Plan.  There are no Plan provisions granting additional benefits based upon a participant's personal plans to retire at a future date in time.

Based on my review of your claim and the relevant facts, I find that your request for additional severance pay benefits is not supported by the terms of the Plan, as it has been determined that you were offered the correct number of weeks for your Severance Eligibility Period, consistent with the proper Plan application. The Plan is governed by the terms of ERISA and must be administered uniformly in accordance with its written terms.

For the reasons outlined above, I must deny your request for additional severance pay benefits. You can appeal this decision within 60 days of receiving this letter by submitting a written request to the Plan Administrator at the following address:

Wells Fargo & Company Severance Pay Plan
Attention: Severance Plan Administrator
MAC F2301-03A
1 Home Campus, 3rd Floor, Des Moines, IA 50328-0001
or email at: scpplan.admin@wellsfargo.com

In addition, you have the right to receive, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits. If the Appeals Committee upholds the denial of your claim for severance benefits, you have the right to bring a civil action under section 502(a) of ERISA.

Sincerely,
Megan O'Hara
Sr. Employee Relations Consultant

Enclosures:  Wells Fargo & Company Amended Severance Plan 2024, Wells Fargo & Company Severance Summary Plan Description (SPD) 2024
cc:  Plan Administrator

To Whom It may concern: Jessica.Richman@wellsfargo.com

I am writing this letter to inform you about my decision to file a discrimination claim with Equal Employment Opportunity Commission (EEOC) about being wrongfully terminated based on national origin. I will submit my discrimination case by 10/25/2024.

I loved working for Wellsfargo and I hope that I will be reinstated as a Full Time Employee (FTE) as soon as possible since I believe I was wrongfully terminated. My termination was based on my immediate manager's prejudice and I hope you will be able to correct it.

In the light of one of Wellsfargo employees death at work due to being over worked, I believe Wellsfargo green lighted my manager to push employees to be more productive and my immediate manager took it as a green light to start her harassment against me.

I informed my manager that I was working as hard as possible and I can not be more productive. I mentioned to her that I did not have enough time to even use my PTO or complete some required trainings ( such as google certification). Unfortunately, Looking back, It seems she was trying to harass me and her aim was harassment and not improving my productivity.

Initially, I assumed she was being equal opportunity harasser; therefore, I ignored her and did not report her to HR. When I was terminated it became clear to me that I was being singled out.

I am attaching my original letter that I forwarded to HR a few month ago. I hope you will be able to reinstate me as soon as possible and avoid getting EEOC involved.

Sincerely your,

Hossein Asghari

321-388-4765

Ha200@netzero.net

**⧈NETZERO**® Message Center

**From:** "ha200@netzero.net" <ha200@netzero.net>

**To:** DISPLACE@wellsfargo.com, Jessica.Richman@wellsfargo.com, xor.vue@wellsfargo.com, Alex.Earle@wellsfargo.com

**Sent:** Fri, Jan 17, 2025 02:20 PM

**Subject:** : wrongfully terminated - given right to sue by EEOC — will start leg al action soon unless reinstated

Hossein.Asghari_R... (401KB)

Hello Displacement Team, Jessica, Xor and Alex,

I was given the right to sue Wellsfargo  (see attached) based on hiring someone outside of my protected class by my manger (Robin Burgess) prior to terminating me.

I hope you will be able to reinstate me as soon as possible so that I will be forced to start legal action against wellsfargo.

thanks,
Hossein Asghari
321-288-4765
ha200@netzero.net